Good morning, Your Honors. My name is Eric Dickman, and I represent the appellant, Mr. Huseman. I would request that I reserve four minutes for rebuttal. Try to keep track of your time. All right. Thank you. This case has to do about an employment on a fish processing vessel. And I would like to start by looking at one of the paragraphs in the terms of employment, which is the excerpt of record number 13. It's also in my opening brief on page four, a little easier to read. That's the section that's really in dispute, I think, more than any other. I'd like to start by looking at the end of that paragraph. And what it says is, however you may at any time opt out of the Alaska Workers' Compensation System in favor of federal benefits. And that's exactly what happened here. This contract was written by Icicle Seafoods, and it was the one ñ Well, let's start there. I thought you had acknowledged that this wasn't a contract. Well, it's terms of employment. Well, but, you know, we have to use these words with some more precision. As I read your brief, you acknowledged that it wasn't a contract. Well, actually, the defendants argued that it wasn't a contract. I thought that you acknowledged that. I don't ñ I don't ñ did not do that, Your Honor. I said you may not want to call it that, but it is the terms that governed his employment, which to me is the same as a contract. Did you bring a breach of contract claim? No, we did not, because the contract said we could bring this claim at any time, and that's what we did. And that's the remedy, is to get his maritime benefits. So we brought this claim, his Jones Act unseaworthiness and maintenance and cure claim, instead. And certainly this was written by Icicle Seafoods, and as such has to be read against them. And it says at any time. And so when Mr. Hussman brings his Jones Act claim, they say, well, it's been more than three years, statute of limitations run. Well, any time doesn't mean within three years. If they meant that, they should have said that. No, but it doesn't ñ I mean, in more plain English, it says you can decide you want ñ you're not restricted as when you opt out, but it doesn't say that you're not governed by whatever restrictions there might be on Federal benefits. I mean, to read it your way would be to say I'm automatically entitled to Federal benefits because I don't want workers' comp. No. Maybe I've misstated what I'm trying to say. I think it's just the opposite. I think that because he was covered by workers' comp. at the time, this contract clause applies. He could opt out. As long as he was getting his workers' comp. benefits, which he was, he could opt out at any time he was getting those benefits. It's true he couldn't do it 30 years from now if he wasn't still getting benefits. Well, what ñ Well, I think the word opt out ñ Well, if you could opt out at any time, why not 30 years from now? Because if it's any ñ if it says any time, then it means any time. Well, I like that reading, but I think you're then reading out the word opt out of workers' compensation. And he was in the workers' compensation system at the time he filed his complaint, and he opts out of that for his maritime benefits, exactly what the contract says. So would you ñ the rest of your sentence, as I heard it, at the ñ any time, it means you can opt out at any time you're receiving workers' comp. benefits. Well, that's the way I read that contract. And I think without that, you'd opt out. I'm sure that would read it too. But, you know, the ñ So in other words, just so I understand your construction of this, any time he's ñ if he's in the state system for workers' compensation, he could be in it for 10 years if he has a certain kind of injury. And on year 10, he could say, according to your construction, you know, I think I'd rather go on the Federal system, and that he could do that. Well, I think that's what that part of that paragraph says exactly. So really, if I take your reading, you're saying what this does is basically erase any Federal restrictions and statute of limitations. I think that's what they agreed to by agreement, yes. And does it matter that he's a seaman and that we're not having two lawyers interpret a contract? I'm sorry. Does it matter that he is a seaman and that we're not just talking about two lawyers trying to interpret a term of employment? Well, yes. I think that's very true. And I argue that in my brief. He ñ I mean, he's in a situation where ñ I think what I'm asking is, does it really matter what the ñ how we would interpret a contract between two corporations that had this phrase, or are we talking about when an employer tells a seaman something in his terms of employment? Well, I think the fact that it's an employer telling a seaman gives it special power in the sense that the seaman certainly didn't understand. And in this case ñ But what is the obligation of an employer who tells a seaman something about what happens to him when he's injured? Well, I think if they tell him that, well, first of all, I don't think they could ever get away from their maritime benefits, that problem. And that's what they were trying to do here, is just pay him workers' compensation. But setting that aside, if they tell him that we're going to pay you workers' comp, which they do in this paragraph, but if you ñ if you decide to opt out of that, we will pay you your maritime benefits, I think they have to do that. And that's not between two equals. The seaman has a right to say, well, that's what you told me. I can believe that. And especially in the case ñ I think workers' comp is just this odd thing. If I'm getting workers' comp, I don't think very many people in America would understand that they could also then get another benefit. We all have this view. If you get workers' comp, that's your action against your employer. Well, so what ñ but, see, that's a whole different argument. And now you're saying that basically they have some obligation to lay out all of his available benefits and saying, okay, here's what you can do ñ here's what workers' compensation is, here's what this is, here's what this is. Well, in the sentence before that, they took on the obligation to coordinate his maritime benefits and his workers' compensation benefits. And if it turns out that you're not covered under Federal benefits because you don't meet the requirements, they don't promise that you'll get Federal benefits, do they? Well, read the paragraph. Does it say in there you'll get them? Well, no. It doesn't say that you absolutely will get them. Does it say you'll get workers' comp absolutely? Well, no, it doesn't. But as the defendants argued in their brief, the Alaska statute has cut out this tiny little niche for seamen who are working on fish processing vessels who aren't also on the deck. They are covered ñ they get Alaska workers' compensation benefits. But they also ñ because the State of Alaska can't take away Mr. Hussman's Federal benefits, he also gets his Federal benefits. And Icicle Seafoods took it upon themselves to coordinate those benefits. But what they did is nothing. They just paid him workers' comp because it was cheaper, as the Alaska Supreme Court says. It's a far less generous benefit. So that's what they did. Well, here's where I'm having some problem. And I just ñ you know, I don't want to quibble with your sympathetic argument. But you're saying they took it upon themselves to coordinate his Federal benefits. Where does it say that? Well, what it says is we will process any claim under Alaska workers' compensation and coordinate any additional benefits that may be due under Federal maritime law. And that, I think, they're saying, that we will coordinate. We will. Not we may. Not that we'll think about it. We will do it. Now, if we go to the last sentence, it may cut against your argument, because it puts the decision in the hands of the seaman, the employee. You may request to opt out. Well, I think that's true. You may say that where our coordination isn't adequate, and you may opt out at any time. But that's not exactly what Mr. Hussman did when he filed his complaint for his maritime benefits. He said, you weren't giving me my maritime benefits. You were just giving me workers' compensation. So I want to opt out. And it's any time. And then, of course, Icicle Seafoods asserted a statute of limitations. I hear the any time argument. At this point, I'm focusing on because the term here specifically puts on the employee, you make that decision. You may opt out. I have a little more difficulty with your argument that somehow the company has volunteered to figure out what's going to be best for the employee, and we're going to take care of everything. Well, I think it comes from the fact that workers' compensation is where you could opt out. Mr. Hussman couldn't opt out of his Federal benefits. You can say, I don't want compensation, and he had that opportunity under this paragraph. But the employer still took it upon themselves to coordinate those benefits, to work them out so that he got adequate benefits, not the least benefits, not just workers' compensation, but that he got all of them coordinated, put them together, unified those benefits, not we're going to choose one over the other for you, and then not tell you what we're doing. Can he release any rights under this paragraph? No, I don't think so. He can't under Section 5 of FELA. That would be a violation, and it would be void. All right. And this paragraph doesn't purport to do that. No. I'd like to reserve my last few seconds anyway. Thank you. Good morning, Your Honors. My name is Philip Sanford. I'm here for Icicle Seafoods, and I have a representative of the company here with me today, very interested in this. She's very interested in it because she's in a bit of a predicament. And I'd like to discuss that very briefly and then open myself up to questions. But I want to make sure you understand why there is a provision like the one we're dealing with today in terms of employment. It's not a part of the agreement. It's not intended to be a part of the employment agreement. That's why there's a different document that's titled Employment Agreement. It is meant to tell somebody something. A few years ago, there was a big lawsuit in Seattle. Judges really presided over it. Two of the lawyers from Mr. Dickman's law firm represented a class. By the time we were done fashioning a caption, they were suing most of the major largest employers of seafood processors in Seattle. The allegation was there's an industry-wide conspiracy. You're pushing these people to comp in an effort to avoid their rights under federal maritime law. Of course, there was a three-year statute of limitations. So as to every major seafood processing company in Seattle, they were permitted to go through every single claim for a three-year period. It was wholly unsuccessful from our point of view. It's not before you, so I'm not going to discuss the numbers. But one of the things that came out of that was, how do we deal with this? So this provision came out in the terms of employment. What it says, I think point blank, is if you get injured on the job, we want you to know you may have rights over here. You may have rights over here. We want you to know that. You tell us what you want to do. It goes beyond that just one step, and it makes one other thing very clear. Because there's a problem. It's not an option. If you're Icicle Seafoods and you have an injured worker, a processor of seafood on your boat, you will file that claim with the Alaska Workers' Comp Board. And if you don't, you're in violation of the Alaska Comp Act, and you will pay penalties. So what do you do when you have an injured worker processing seafood on your boat, and they don't tell you what they want to do? Obviously, you've got to comply with Alaska state law, and they do. If subsequent to that, the employee comes back and says, I've got these federal remedies, I'd like to go that way, they file a notice of controversy with the Alaska State Workers' Compensation Board that says this person has told us they don't want to have their medicals paid for under the Comp Act. They want their medicals paid under the Doctrine of Cure under federal maritime law, and they don't want temporary total disability. They want maintenance. And the Workers' Comp Board, not too surprisingly, takes the position, as long as they're getting what they're entitled to, we don't care what you call it. And so you transfer those benefits. Well, you know, that's all very nice to be so kind and tell them those things. They're entitled to a Jones Act claim, which nobody tells them, which is a far better benefit than Workmen's Comp. That's what the Jones Act and the FVLA, railroad workers and maritime workers, are not required to give up personal injury suits, which are more remunerative. But nobody tells them that there's a Jones Act claim and that they have an opportunity to get far more damages. You're absolutely correct. In fact, this provision is not entitled or not intended to touch upon unseawitness for the Jones Act. It is our position when we talk about it. It's not intended to inform them of their rights. It's not entitled to inform them of their rights to Jones Act claims, unseawitness claims, damages, special or general. It's intended to inform them that they have benefits under the Comp Act and benefits under federal law. The payment of their medical benefits. You'll take care of all those benefits. You'll coordinate them all. They routinely do. If someone comes forward and says, we elect federal benefits over what you have been paying us under the Comp Act, then they go back and they figure out how the two compare. They pay them the difference. Very often it results in a reduction of the check the employee gets every week. I see it all the time. And if he files a Jones Act case and he wins? No, not if he files a Jones Act case. It has nothing to do with a Jones Act case. If an employee comes back after receiving state comp benefits and says, I don't like that. I want my federal maritime benefits. I want maintenance, in other words, instead of temporary total disability. Right. The maintenance and cure is comparable to the worker's comp. Right. And on top of that, he has a Jones Act claim or an unseaworthiness claim, which he's never told about. He's not told about that. What do you think about Orsini and its statements about the obligations of the vessel owner to tell unrepresented seamen about their legal rights and possible causes of action? I think that Orsini and that line of cases have to do with settlements where an employer sits down with an unrepresented seaman and says, you're now about to give up every right you have in exchange for this amount of money. Why doesn't it apply when an employer says to him, look, we're going to take care of all of your problems and handle your claims for you? Well, I hope no one's going to construe this paragraph as indicating that the employer is going to take care of all their problems. Why? Well, they're going to take care of their claims that result from the injuries, both the federal claims for benefits and the worker's comp claims. And you're going to coordinate them all, and they don't have to worry about anything, as long as they don't realize they have a Jones Act claim. I don't know how you construed the paragraph that's at issue to indicate that any seaman, potential seaman, or Alaska worker's comp claimant is relinquishing anything. No, I didn't conclude to say he's relinquishing anything. That's for seaman Garrett himself. No, no. See, I'm saying that you're not advising them of what their claims and their rights are, but you are telling them that you're going to take care of their problems and handle their claims, both state and federal, and coordinate them for them. Your Honor, if you construed the paragraph to say all that, then we're in trouble. We construed the paragraph to say you have benefits here and there. You may want to look into it and tell us what you want to do. I don't think it says we're going to take care of all your problems for you. Do you know of any authority for the proposition that you must affirmatively advise the seaman of their federal tort-type claims? A little. There is no case directly on point. Do you have to tell a seaman you've got rights to Jones Act damages, But this Court, not too long after we briefed these issues, issued its opinion in Philip Thorman v. American Seafoods. Obviously, we're talking about seaman. There was a claim of misrepresentation, contractual. This is a wage claim. These seamen were asking for wages, and the allegation was that the employer had an obligation to inform them. Equitable tolling. Equitable estoppel was at issue. But it's wage claims. It's not seaman's claims. I think Judge McKinnon is quite familiar with that case. I suspect so. What the Court said is merely keeping someone in the dark is not the same as affirmatively misleading them. I don't want anybody to think anybody was kept in the dark. I think Icicle Seafoods did a lot more than that. They're the people who said, in writing, you may have federal remedies. I guess that case also said you don't impose a general fiduciary duty for it. Correct. And it said it didn't apply to Jones Act claims. Well, there were no Jones Act claims involved. No. But it said specifically we're not talking about cases of injuries at sea. I'm not aware of any cases that in that case. Could you finish your statement? You're not aware of. I'm not aware of any cases that address the question, does an employer have an affirmative right to tell an injured seaman that they have rights to damages under the Jones Act or unseawitness doctrine? None is cited to you on any of the briefing in this case, Your Honor, because I think there are none. Is part of when, as I hear your argument, you're focusing on the word benefits and distinguishing that from claims and damages that might accrue in a tort context? Is that part of it? Yes, Your Honor. You're talking about kind of employment benefits. Is that what that paragraph talks to? Well, that was the intention. That's why I give you this history of the class action lawsuit and so forth. It's this coordination of how are we going to take care of their medical benefits, how are we going to take care of their maintenance versus time loss. It's an effort to resolve once and for all the allegation that the employers are trying to push people in one direction. It's an effort to say point blank, employee, here's two things you should keep in mind. You may be here, you may be here. Be advised. If you don't file under the Alaska workers' comp, is there some kind of a penalty against the employer? Twenty percent of the money you did not pay. May I go back to your statement? What about no case saying that you have an obligation to advise injured seamen? The Jones Act or other claims? Are you familiar with Blake? Not as I stand here, Your Honor. In Orsini, which is a Ninth Circuit case, it cites Blake and says where an injured seaman is not represented by counsel, it is the owner's obligation to make a, quote, to all of the seaman's rights, including his right to sue for damages under the Jones Act and his right to wages, maintenance and cure under the applicable seaman's law, and that's a quote from Blake. Do you have any comment on that? I am not familiar with Blake, Your Honor. Not as I stand here. Maybe I've read it and forgotten it, but it sounds like it is one in a long line of to relinquish any rights, you have to tell them what those rights are. Okay. All right. Thank you. Very briefly, let me ask you about one other subject. I don't want to interrupt this, but I would like to go back to the at-any-time phrase from the terms of employment and plaintiff's argument that, in effect, that holds the statute of limitations open for the Federal claims. What's your response to that? Well, one would be that the paragraph isn't intended, again, to address any Jones accuracy with this claim, so it shouldn't apply to that. But I think read in the context of the paragraph and with the history of why this paragraph is devised and put in terms of employment one day, it is intended to tell people that they can follow the workers' comp path for a while if that's what they want, and I think very often they ought to. They get bigger checks every week. Why not? Then, when you've decided that time loss is over, you can go out and seek your Federal remedies. It's intended to tell people there's no limit here and you don't have to choose. I think some of the argument in the briefing, some of the argument you heard today, is intended to convey to you that this employer is trying to tell people you've got to make a choice. There's a fork in the road. You go down this one. You don't get to go down this one. It's not true. They can go down one fork as long as they want, and then they can switch. There's no limit. There's no time limit. Speaking to benefits, employment benefits, as opposed to tort claims, there would be no time limit on deciding to switch over to the Federal side if you've been on Alaska State Workers' Compensation? No. As a practical matter, for the purposes of the Compensation Act, there really is no statute of limitations. I mean, what an employer has to prove to invoke the statute of limitations, it's just never done. The point is that that suggests that maintenance and cure, which I understand to be the Federal benefits that are the counterpart to Workers' Comp, that there is no time limit on applying for that fork in the road as long as you're still receiving as long as you're getting something. If you're no longer getting something because you're all cured and so forth, there may be no substantive claim. But at least in terms of the timeliness, this, as you understand it, means that particular aspect, the Workers' Comp or maintenance and cure decision, can be made at any point in time. Let me try to be more specific. I think there is a statute of limitations in the case law regarding a maintenance claim. You can't file a suit for purposes of gaining maintenance beyond three years. But if we're talking about a seaman who's a seafood processor, then under the Alaska laws, that really is no detriment to them because they're going to get the same thing, excuse me, under the Compensation Act. And if you're representing a seaman who's not made a maintenance claim within that three-year statute of limitations, you turn to the commensurate right, the Alaska Comp Act. So there is a statute of limitations. There is a time limit for maintenance claims. At least for a processor, it's not going to have much meaning because they Do you see any reason that somebody would choose the federal employment right up front as opposed to the state right? Would there be circumstances? Yeah. The outcome can vary depending upon a number of factors. But you've asked me for one little part of that. So the answer would be if someone is injured the first day of their contract, then part of their federal maritime benefit package of maintenance, cure, would be unearned wages, the third component that hasn't been discussed much here in the case. If they're injured on the first day of their contract and they happen to have a year-long contract, they're entitled to be paid all the wages they would get for the entire year. There's no commensurate right under the Alaska Comp Act. But they wouldn't really have to do this. Again, I don't – I wouldn't want you to think a person has to make a choice here. The cases out of our district courts in the Ninth Circuit, at least the two that deal mostly with maritime issues, Alaska and the Western District of Washington, the district court judges have said. You're entitled to all of it. The only thing you can't do is get a double recovery. Judge Rothstein said it here. Judge Sedgwick said it in the North. So a person can do anything they want. And their limit is only that you can't ask somebody to pay your medical bills twice. You can't collect maintenance and time loss. And if you stick with the Alaska workers' comp scheme, it doesn't have any effect on your ability to pursue the Jones Act. Is that true? According to the cases, federal and in Alaska, the Alaska Supreme Court, that's absolutely correct. So you don't need to opt out of Alaska benefits to do that? No. No. The limitation would only have to do with the maintenance, cure, unearned wages compared to time loss and payment of medical bills under the Comp Act. And, of course, there's a permanent partial impairment rating under the Comp Act that has no parallel under the Jones Act, except that it kind of sounds like general damages. The Comp Act asks a doctor to look to the AMA guidelines for the assessment of permanent impairment, apply a formula, come up with a number, and you get a percentage of the maximum amount allowed under the Comp Act. So if you have a 5% whole person impairment, you're entitled to a payment of $8,850, for example. So you have that state right that doesn't have a parallel. Thank you. We'll give you an extra five minutes, also, if you need it. Thank you, Your Honor. Well, keep going. You know, I'm listening to this, and I'm hearing, you know, when we say that you will coordinate your benefits, that means you have to choose between the two. And, you know, I'm having real trouble with that. You know, he said you have to just make a choice. And I'm going, well, coordination doesn't mean choose between the two. Coordination means control of the two of them. I think you both agree that you don't have to make a choice. Well, you do. I mean, I think that's what he's saying. Because they pay at the workers' comp. Let's just be clear, because part of it is that we've got multiple kinds of Federal claims here. Maintenance and cure is one. And as to that, as I now understand it, there's a fork in the road. You get one, you get the other, you don't get both. They're comparable, not equivalent. Well, you know, I disagree with the case law on that. I think you can get both, but let's go forward on that. Wait. Do you disagree with how the judges have determined it, or do you disagree with his statement of the case law? Well, I think the two cases that were cited occurred before this change in the workers' compensation law that said we're only going to cover, out of all the seamen in Alaska, we're only going to cover this little group of fish processors. That happens after these cases that say you can't have that set off. And I don't, that you have to do this set off. And I, there isn't a case, it hasn't come up, whether or not, when the Alaska Legislature said we're going to take these few people and add to them workers' compensation benefits, did they mean to add that benefit to them so they get both, or did they mean to just somehow or another enact, just for this little group, some sort of choice? There is no case law on that whatsoever. In other words, if you came in front of us and said, my client read this and thought he had to make a fork between the Federal Maintenance and Cure and the Alaska, and I'm arguing he really doesn't, that there's some way you can kind of get a little of both, and therefore this isn't fair. He can. I mentioned that in my brief. Right. But that's not, the situation here really, I think, in part, depends on what you mean by benefits. Well, I think that we all think about benefits as compensation for an injury. I think to try to say to a seaman that benefits aren't what you get when you get injured is splitting a hair that is meaningless. That's the question. I think that we've been talking about what this clause really means when we're talking about benefits. Does it, for instance, cover the Jones Act? And I think your opponent says quite correctly that this clause is not intended to deal with the Jones Act. Well, you know what it says. Just a minute. Okay. I think his interpretation is correct, that it was not intended to deal with the Jones  Act. It deals with the other types of benefits we're talking about, the state workers' comp, the maintenance and cure, those types of benefits. The question is if this kind of provision is presented to an unrepresented seaman, what is the law as to the effect of that? Not whether it covers the Jones Act, but what is the effect of presenting a seaman with this type of provision? Well, you know, maritime law generally for seamen, the idea is to provide remedies rather than take them away. And I think if you have an unrepresented seaman and you give them this language where you can say we're going to do any Federal benefit, they talk about it in that paragraph, and then you say, really, we only mean maintenance and cure, and you're telling that to someone who's unrepresented, and Mr. Hussman didn't know he had these benefits, that's impossible. And I think in this case, the cases about releases apply. Because contrary to what was argued up here earlier that, oh, you know, workers' compensation is all but the same as the Federal, I mean, the Federal maritime benefits, the Alaska Supreme Court clearly said that's not true. In fact, they said even maintenance and cure is a better remedy than is workers' compensation. That's what they say in Brown, Brown v. State of Alaska. They don't say it's close. They say even maintenance and cure is a better remedy, and you get on top of that the warranty of seaworthiness and the Jones Act negligence claim. But they don't say, oh, it's an even split, even for the maintenance and cure part. And, again, in this contract clause, if that's what Icicle Seafood intended to do, they should have said you have your choice between Alaska workers' compensation and Federal maintenance and cure. But that's not what they say. They say any Federal remedies. And this whole contract, just to point out one more thing, you know, to support that that's what they're trying to do is only pay him the maintenance and cure, only pay him Alaska workers' compensation. On the page before the paragraph we're talking about in this employment agreement, it says, if you must leave the floating processor for medical care that is not job-related, transportation and clinic expenses will be charged to you without your approval. That is a clear violation of maintenance and cure. Maintenance and cure, if you go on a boat and you just get the flu and you have to get medical care, that medical care is paid for. There is no requirement that it be related to the job. That's one of the wonders of maintenance and cure. Kennedy. Do you want to bring this to a conclusion? We've used up your extra five minutes. Well, you know, I think what we're talking about here, I think this whole paragraph, this whole thing was just to trick the seaman into taking workers' compensation and not looking further. And I think to allow that to happen is outrageous. Thank you. All right. Thank you. The case is adjourned. It will be submitted.
judges: Reinhardt, McKeown, Clifton